J-S47013-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| JEFFREY LYNN ARMOLT, | |
| Appellant | No. 125 MDA 2015 |

Appeal from the PCRA Order entered January 8, 2015,
in the Court of Common Pleas of Adams County,
Criminal Division, at No: CP-01-CR-0000509-2002

BEFORE: ALLEN, OTT, and STRASSBURGER*, JJ.

JUDGMENT ORDER BY ALLEN, J.: **FILED JULY 23, 2015**

In this appeal, Jeffrey Lynn Armolt ("Appellant") challenges the PCRA court's determination that his latest petition filed pursuant to the Post-Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. sections 9541-46, is untimely, and that he failed to meet his burden of proving an exception to the PCRA's time bar. Our review of the record refutes Appellant's claim. Moreover, the Honorable John D. Kuhn has prepared a forty-eight page opinion in which he thoroughly and exhaustively reviews the prolonged procedural history of this case and the prolix and, at times, nonsensical assertions made by Appellant in support of his quest for post-conviction relief. We therefore adopt Judge Kuhn's January 8, 2015 opinion as our own in affirming the PCRA court's order denying Appellant's latest PCRA petition.

Order affirmed.

*Retired Senior Judge assigned to the Superior Court.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 7/23/2015

IN THE COURT OF COMMON PLEAS OF ADAMS COUNTY, PENNSYLVANIA
CRIMINAL

COMMONWEALTH

v.

JEFFREY L. ARMOLT

CR-509-2006

**MEMORANDUM OPINION**

Before the Court for disposition is a Post-Conviction Collateral Relief Act Petition filed by Petitioner on August 26, 2014, along with a Supplemental Amendment filed October 16, 2014. For reasons set forth herein, those petitions are denied without a hearing.

This is Petitioner's third attempt to seek post-collateral relief in this case and fourth attempt overall. Petitioner seems to believe that this jurist has improperly created legal obstacles to his ability to litigate the merit of claims he believes will entitle him to relief from his convictions and sentencing. Petitioner refuses to recognize that it is the law, not the undersigned, which precludes him from having a hearing where he can air his grievances. It is not this Court, as Petitioner contends, that "refuses" to address the merits of his claims but rather the Court's lack of authority to do so. Throughout a substantial portion of the life of this case, Petitioner has challenged or rejected the services of learned counsel. He has attempted to educate himself on the law after his sentencing but, despite these somewhat commendable efforts, he unfortunately does not fully comprehend, and sometimes mixes, facts and legal principles. Accordingly, the undersigned will undertake an exhaustive analysis of this matter in the hope it is clear to Petitioner that he has exhausted his legal remedy on all known issues and that he is not entitled to the relief he seeks.

1



BACKGROUND

On March 27, 2002, the Pennsylvania State Police filed a Criminal Complaint charging Petitioner with Rape, Aggravated Indecent Assault and Indecent Assault[1] for incidents allegedly occurring in Adams County between September 2001 and February 2002. Attached to the Complaint was an Affidavit of Probable Cause which alleged that on February 24, 2002, a 12-year-old juvenile, K. S., gave birth to a premature baby at Gettysburg Hospital. Hospital staff contacted the State Police. The trooper assigned to the case interviewed K. S. who reported that Petitioner (DOB 5/1/1966) engaged in various sexual acts with her, including 15-20 acts of sexual intercourse. The Affidavit continued that the trooper obtained blood samples from K. S. and Petitioner, as well as a swab from the baby. Testing was allegedly completed by Cellmark Diagnostics Lab indicating that the "data are consistent with [Petitioner] being the biological father of the baby." The baby died on March 6, 2002. Petitioner was arrested on the allegations the same date the Complaint was filed.

On April 29, 2002, Petitioner appeared before Magisterial District Judge John C. Zepp and, in the presence of counsel, Anthony (Tony) Miley, Esquire, of the Adams County Public Defender's Office, waived his preliminary hearing. The following day, Kevin Robinson, Esquire, entered his appearance on behalf of Petitioner and filed a Petition to Remand to Preliminary Hearing.[2]

On May 30, 2002, and again on June 26, 2002, formal Arraignment was continued at request of Petitioner.

---

[1] Rape at 18 Pa. C.S.A. §3121(a)(1) and 3121(a)(6); Aggravated Indecent Assault at 18 Pa. C.S.A. §3125(1) and 3125(7); and Indecent Assault at 18 Pa. C.S.A. §3126(a)(1) and 3126(a)(7).
[2] On the original petition, the Assistant District Attorney wrote "the victim is (sic) 12 years of age when the instant offense was committed, she became impregnated, had a miscarriage of that baby and a subsequent DNA test showed that defendant was the father. The defendant was represented by competent counsel, Anthony E. Miley, at the preliminary hearing and a decision to not have the hearing was made after counsel reviewed the expert DNA analysis."

2

On August 1, 2002, a proceeding began before the undersigned at 12:15 P.M., regarding Petitioner's request for the remand.[3] Petitioner was not present but counsel indicated that Petitioner agreed his presence was not required. During discussion, Assistant District Attorney Coffey stated that if the matter was remanded and the child victim had to testify, the Commonwealth would pursue mandatory sentences but if she was not required to testify, the prosecution would not be pursuing the mandatories. Counsel was directed to review this position with his client. At 1:54 P.M., with Attorney Robinson present, ADA Coffey reported that he had been mistaken and, because the DNA evidence was so compelling, there was no offer to waive mandatory sentences even if the child did not have to testify at a remanded preliminary hearing. The earlier offer had not yet been reviewed with or accepted by Petitioner. The Court granted Petitioner's request to remand the case for a preliminary hearing. On November 12, 2002, Petitioner again appeared before Magisterial District Judge Zepp and, with counsel present, waived his preliminary hearing.

On December 30, 2002, Petitioner was formally arraigned and entered a not guilty plea. The Information charged him with Rape as a felony of the first degree (Counts 1-15), Aggravated Indecent Assault as a felony of the second degree (Counts 16-45), and Indecent Assault as a misdemeanor of the second degree (Counts 46-75).

On January 7, 2003, at the request of Petitioner, trial was continued through the trial term beginning March 24, 2003.

On February 7, 2003, Petitioner filed a Motion for DNA Testing, alleging that the first DNA test was invalid and requested that a second test be conducted. On March 17, 2003, the Court granted Petitioner's Motion For DNA Testing and authorized payment of up to $950.00 for testing to be performed by BRT Laboratories in Baltimore, Maryland.

---

[3] For unknown reasons, the original motion was misplaced or lost. This problem was not discovered until on or about June 26, 2002, when a copy was substituted for the original and a hearing scheduled.

On March 10, 2003, at the request of Petitioner, trial was continued through the trial term beginning June 2, 2003. Subsequently, on May 19, 2003, at the request of Petitioner's counsel, trial was continued through the trial term beginning August 18, 2003, because it was reported that the DNA testing had not been completed. On August 18, 2003, it was revealed that for some unknown reason, the County had not paid the lab for the DNA testing. The Court again directed the payment and also specifically directed how the specimens were to be collected and forwarded to the lab. As a result, Petitioner requested that trial be continued through the trial term beginning December 8, 2003.

On November 20, 2003, Petitioner's counsel reported that "the second DNA just came back positive" and that the parties were hoping to finalize details of a plea agreement. At the same time, Petitioner waived his right to a jury trial.

On December 22, 2003, Petitioner appeared before the Court and entered a plea of guilty to three counts of Rape, 18 Pa. C.S.A. §3121(a)(6). Petitioner presented a completed written plea colloquy form and indicated that he had no questions about the information contained therein. The Commonwealth indicated that restitution being requested totaled $70,473.62. The plea was offered with the understanding that sentencing would not exceed an aggregate period of incarceration of 15-30 years and that Petitioner could argue for a lesser sentence.

During the plea colloquy, the District Attorney reported that

"On February 24, 2002, KS, a 12 year old young lady gave birth to a premature baby boy at the Gettysburg Hospital. The Pennsylvania State Police . . . were contacted by the staff . . . regarding the incident . . . The Trooper interviewed KS . . . and she named [Petitioner] as the person who had been having sex with her and fathered the baby. According to her [Petitioner] was at that time the young lady's mother's paramour . . . She said the behavior began in September of 2001 . . . and continued . . . up until February of 2002. Blood samples were obtained from the baby that the juvenile had given birth to. The blood samples were collected for paternity and they indicated that [Petitioner] was in fact the father of the young baby . . . [Petitioner's] date of birth is May 1, 1966 . . ."

4

The Court then explained the elements of Rape to Petitioner and asked:

> COURT: Do you understand what it is that you would be admitting on the particular charge?
>
> DEFENDANT: I understand, Your Honor. Mr. Robinson explained this in detail for me.

The Court explained the sentencing range to Petitioner:

> COURT: Do you understand that this is considered, each of these are considered felonies of the first degree and they carry up to 20 years as a maximum penalty and $25,000 as a maximum fine.
>
> DEFENDANT: Yes, sir.
>
> COURT: There is no plea agreement. Technically the charges could be imposed consecutively which would generate a maximum of . . . 60 years . . . However, you would have a plea agreement that the maximum would not exceed 30 years. [The District Attorney] has indicated that and is correct in this that there is a mandatory minimum sentence of five years on each of these offenses. If they were to run consecutively, they would be 15 in total and that's why the agreement is capped out at a maximum of 15 to 30 years. The understanding would be then it would be up to the Court to impose the sentence which could be anything up to that amount . . . Do you have any questions about those consequences?
>
> DEFENDANT: No, sir.

The Court further explained the impact of Megan's Law:

> COURT: The other thing to mention to you is this is also subject to something which is called Megan's Law. Megan's Law is a requirement that before we can do sentencing, we have to have you evaluated by the Sexual Offenders Assessment Board which is basically a psychologist who would interview and examine you. That person would then provide a report to the District Attorney's Office. If the report indicated that you were a sexually violent predator, the Commonwealth would then request a hearing be scheduled to determine if that could be established. You, of course, would have the right to oppose that designation and if it was deemed appropriate and you made the appropriate request, you could have an expert examine you for the purposes of contradicting the board's assessment. This is significant because under Megan's Law when you are released there are requirements that deal with reporting your whereabouts on a regular basis. There are periodically forms which are sent to you that you have to fill out and return. If you were to go to another state, for example, you'd have to register with the police agencies in those states and because of the nature of the charge, the length of time that you would be doing this would be for the balance of your life. If you don't follow through with the requirements, that could bring about

additional charges which are felony charges. Do you have any questions about those consequences?

DEFENDANT: No, sir.

COURT: At the time of sentencing we would go over in greater detail each one of those Megan's Law requirements and you would then be given a form that you would be asked to sign acknowledging that these requirements were mentioned to you so you know what those requirements are. If you want greater detail on those at the present time, I can provide them to you. Do you need any additional information on the Megan's Law requirements?

DEFENDANT: Not at this time, Your Honor.

Petitioner then indicated that he had enough time to speak with counsel, that he was satisfied with the advice and services received, that he was not being pressured, that there were no other promises or understandings, and that he had enough time to think about what he was doing. Petitioner then entered his plea:

COURT: Are you pleading guilty because in fact during the period September, 2001 through February, 2002 that on at least three occasions you had sexual intercourse with someone that was less than 13 years of age?

DEFENDANT: It would appear so, Your Honor.

COURT: You may take the plea.

On April 12, 2004, Petitioner appeared for sentencing. Petitioner was given the opportunity to speak on his own behalf but declined to do so. As noted, at the time of the plea colloquy and as indicated in the Pre-sentence Investigation Report, the Commonwealth was seeking restitution in excess of $70,000.00. When this was mentioned Petitioner's counsel responded:

MR. ROBINSON: You Honor, we received a breakdown of that. And we'll stipulate and we have no objection to that at all.

The Court also noted that the Sexual Offenders Assessment Board had concluded that Petitioner was not a sexually violent predator. Nevertheless, Petitioner was again reminded that he would be subject to the provisions of Megan's Law. The Court

6

sentenced Petitioner to a period of 5-10 years on each count with each count to run consecutively for an aggregate period of 15-30 years which was within the parameters of the plea agreement.

On April 20, 2004, Petitioner filed a Motion For Modification of Sentence. At the same time, Attorney Robinson moved to withdraw as Petitioner's counsel, and Petitioner joined in that request. Three days later, Petitioner filed a pro-se Motion To Reconsider. Therein, he claimed Attorney Robinson had rendered ineffective assistance of counsel, the DNA test reported the wrong blood type for him, and that the discovery material raised several unanswered questions.

On May 10, 2004, Barbara Entwistle, Esquire, was appointed to represent Petitioner. In the Order entered at that time, the Court noted that on April 23, 2004, it had received Defendant's pro-se Motion To Reconsider. The Court stated that it would take no action on the Motion but instead directed that Attorney Entwistle discuss the concerns raised therein with Petitioner and to file an amended motion within 20 days otherwise the issues raised therein would be waived.

On May 20, 2004, Petitioner filed a Motion To Withdraw Guilty Plea or Alternatively Motion For Reconsideration of Sentence. Therein, Petitioner raised, inter alia, the following averments:

a. That Petitioner insists he is not guilty;

b. That Petitioner's plea was not knowingly, intelligently and voluntarily entered;

c. That Petitioner understood that his sentence would be capped at 5-15 years;

d. That plea counsel was ineffective for failing to properly investigate the case, not sufficiently meeting with and communicating with Petitioner, misrepresenting the plea agreement, telling Petitioner it would be better to plead guilty rather than nolo contendere, failing to adequately explain the

7

written plea colloquy form submitted at the time of the plea, and pressuring him to enter a plea by demanding a substantial fee to proceed to trial.

On July 20, 2004, Petitioner appeared before the Court pursuant to the motions filed on May 20. Immediately, Petitioner indicated that he was withdrawing his Motion To Withdraw Guilty Plea. The Court then focused on the Motion For Reconsideration of Sentence and provided Petitioner with ample opportunity to present any information favorable to that motion. Other than some character witnesses[4] Petitioner offered, no additional information not already considered at the time of the original sentencing. The Court reviewed factors that were originally considered in imposing sentencing:

> COURT: At the time of sentencing in April of this year I had the presentence investigation report which, of course, I had reviewed. The three charges called for mandatory minimums of 5 years . . . We also know that a report indicated that he was not a sexually violent predator.
>
> I'm not sure that this was attached to the Defendant's copy of the presentence report, but I did have as part of the confidential section a statement from Kelly Sheeley.[5] I also had a statement from Tammy Mummert[6] and a victim impact statement from her as well. There was a victim impact statement from Wayne Bowers.[7] I guess that was pretty much the extent of it.
>
> I should also indicate that I was somewhat familiar with the background of this and the impact on the young lady because she ended up in Juvenile Court and I presided over those matters relating to her dependency that arose through this whole experience.

During that discussion, Petitioner's counsel mentioned that Petitioner had anticipated entering a nolo contendere plea until instructed by Attorney Robinson on December 22, 2003 that he needed to change his plea to a guilty plea and his reluctance

---

[4] The Court felt that the significance of the character letters was minimized because they were based on the belief that Petitioner did not commit the offenses for which he had entered his plea. Because he was not withdrawing those pleas, the letters were contrary to Petitioner's admissions and considered of little value.
[5] The victim.
[6] The victim's mother.
[7] The victim's father.

8

to do so was reflected in his response to the Court's question whether he was pleading guilty. At that point, the following discussion occurred:

> COURT: Just so everyone understands, I don't know that I had any specific conversations with Mr. Robinson but the Court made a policy some time ago that we were not accepting nolo contendere pleas on sex offense cases and it had a lot to do not so much with getting a plea done but the problems that they have when there is a conviction and then the alleged perpetrator is going to treatment and they say, well, I didn't do anything and they kick them out of treatment and nothing is accomplished. So we made a policy decision we were not going to accept nolo pleas on sex offenses. If somebody says I didn't do it, let's go to trial and have it out. Is that his position then, that's why he didn't say anything?
>
> DEFENDANT: Basically, Your Honor, Mr. Robinson told me at the time the dollar amount it would take to go to trial and told me that my best chance was to take the plea.
>
> COURT: That didn't exactly answer my question but I understand what you're saying. Is it your position that these events did not occur?
>
> DEFENDANT: Basically, yes Your Honor. I don't want to be – Your Honor, what I'm asking for is I'm asking for the Court to take into consideration all factors. . .

As the Court was trying to ascertain what information Petitioner wanted considered, the

District Attorney interjected:

> DISTRICT ATTORNEY: There were two separate independent DNA tests in this matter, Your Honor, and each of those tests were –
>
> MS. ENTWISTLE: Your Honor, I believe the first test was not a DNA test. The first test was some other type of test. There was, however, at least one DNA test.
>
> DISTRICT ATTORNEY: There two separate DNA tests performed in this matter by two separate independent labs and both of those tests are conclusive that this Defendant is the father of the child that died and at this point if this Defendant wishes to withdraw his guilty plea, we will allow him to withdraw his guilty plea and the Commonwealth is prepared to go to trial in this matter, Your Honor. If he's indicating that he pled guilty and he was forced to plead guilty and he did not commit these crimes, then we feel it's in his best interest that he withdraw his guilty plea and we're prepared to go forward with trial in this matter.

9

Petitioner's counsel asked for a moment to speak to her client after which Petitioner

clearly rejected the opportunity to withdraw his plea:

> DEFENDANT: Sir, when this started the first words Miss Entwistle said
> was we did not, and I emphasize not, want to withdraw the guilty plea. . .

Later, the Court returned to this same subject:

> COURT: Did Mr. Armolt wish to consider any further the
> Commonwealth's offer?

> MS. ENTWISTLE: Withdrawing the guilty plea. Do you wish?

> DEFENDANT: No, Your Honor.

The Motion For Modification of Sentence was denied. Petitioner did not file a

direct appeal of sentencing.

Thirty months later, on January 16, 2007, Petitioner filed a Motion For Post-

Conviction Collateral Relief. By letter dated February 2, 2007, the Court advised

Petitioner of its intent to dismiss his PCRA motion because the issues raised therein

were untimely and/or meritless. Because this was Petitioner's first such motion and

because he was raising numerous issues, the Court appointed Thomas Nell, Esquire, to

represent him. On February 18, 2007, Petitioner filed a pro-se Appeal To Dismissal of

the PCRA. On March 22, 2007, at the request of Petitioner and Attorney Nell, counsel

was relieved from representing Petitioner.

On April 17, 2007, the Court conducted a conference on Petitioner's PCRA

motion. Petitioner appeared by video from prison. Petitioner was asked to identify the

issues he wished to be addressed and identified the following:

a. There was a breach of his plea agreement made on November 20, 2003,

which called for a sentence of 5-15 years' incarceration.

b. The court's "policy" of declining nolo contendere pleas in sex offenses

interfered with the plea bargaining process;

10

c. The Court improperly reviewed information in the confidential section of the pre-sentence report;

d. The Court should not have presided over this matter and a Juvenile Court matter involving the minor victim;

e. Failure of Petitioner's blood type to appear on the DNA report.[8]

All issues appeared to be time-barred. Nevertheless, Petitioner was granted until June 2, 2007 to provide further reason why his motion should not be dismissed.

On August 17, 2007, the Court wrote to Petitioner granting him additional time until September 28, 2007, to provide reasons why his motion should not be dismissed.

On September 11, 2007, Petitioner filed a Supplemental Brief in Support of PCRA Petition. Therein, he raised judicial and prosecutorial misconduct. Specifically, it appeared that he alleged the undersigned had impounded a May 11, 2004 custody proceeding. He further claimed that even though the undersigned was aware that there was a blood type error and that the DNA testing was fraudulent, this Court improperly precluded him from introducing other "testimonial evidence." Petitioner argued that the undersigned should recuse himself from further involvement in this case. Finally, he raised ineffective assistance of prior counsel. On November 7, 2007, Petitioner supplemented his brief further.

On January 28, 2008, the Court dismissed Petitioner's Motion For Post-Conviction Relief without a hearing. The reasoning was set forth in an accompanying Opinion and was based upon certain issues being time-barred (primarily because the information forming the basis of the claim was known to Petitioner long before the time

---

[8] The transcript noted that the DNA report was never part of the criminal court record. Furthermore, Petitioner stated that he spoke to Attorney Robinson about the alleged blood type issue on April 12, 2004, the day of sentencing.

11

when the issue could be raised in a PCRA proceeding) and others not having merit.[9] The issues discussed and the basis for dismissal are outlined below:

1. Petitioner claimed there was an original plea agreement for him to waive his second preliminary hearing in exchange for the Commonwealth not pursuing mandatory sentences. – The record is clear that when the remand was discussed on August 1, 2002, Petitioner was not present. Before the offer could be transmitted to him, it was withdrawn. If Petitioner was not aware of the offer he did not waive his hearing in reliance upon that offer. If he knew of the offer, as he was claiming, he was well aware of this issue when he entered his plea on December 22, 2003.

2. Petitioner claimed the DNA testing was based upon his incorrect blood type. – Petitioner acknowledged that he was aware of this alleged discrepancy on April 23, 2004, when he filed his pro se Motion to Reconsider.

3. Petitioner claimed that discovery information was withheld indicating that John Hauf had entered a plea of guilty to Indecent Assault on May 3, 2003, involving the same victim as in Petitioner's case. – In Petitioner's Motion to Reconsider filed May 11, 2004, he referred to discovery information provided by the Commonwealth that reported allegations made by K. S. against Mr. Hauf. In the Motion, Petitioner averred that he and Rebecca McGlaughlin-Wright were called to the hospital where he was advised that Mr. Hauf had assaulted K. S. Ms. McGlaughlin-Wright's

---

[9] The PCRA law will be discussed in greater detail later in this Opinion. However, the statute provides that a court does not have jurisdiction to address the merits of a claim unless the motion was filed within one year of the date the judgment in the case became final. Here the motion needed to be filed no later than August 19, 2005 and Petitioner's Motion was filed more than 16 months later.

letter attached to the motion confirmed that Petitioner knew of Mr. Hauf's alleged involvement in February 2002. A letter from Mary Ochs, attached to the Motion, confirmed Petitioner's knowledge of the accusations as well. Mr. Hauf's case was a matter of public record. Furthermore, Petitioner's PCRA motion contained a copy of a letter dated July 9, 2004, from Attorney Entwistle to Petitioner outlining Mr. Hauf's plea and sentence.

4. Petitioner claimed that on April 12, 2004, the Court intentionally withheld information from him that was part of the confidential section of the pre-sentence investigation report. – On July 20, 2004, in the presence of Petitioner, that information concerning the victim impact statements was revealed on the record.

5. Petitioner claimed that the Court used information against him which the judge obtained in a separate proceeding. – Petitioner was referring to the fact that the undersigned was the Juvenile Court Judge when the victim in this matter was adjudicated dependent. As a result, I was aware of the allegations and the impact of the sexual abuse upon the victim at the time of sentencing. During the July 20, 2004 proceeding, I mentioned this prior involvement on the record before Petitioner was offered the opportunity to withdraw his guilty plea.

6. Petitioner claimed that the Court improperly imposed a policy not to accept nolo contendere pleas in sex offense cases and thereby coerced him into pleading guilty. – Petitioner acknowledged that he was aware of the Court's philosophy at the time he entered his plea. Even if it was unclear to him at that time, the "policy" was discussed on the record on July 20, 2004.

13

7. Petitioner claimed that Attorney Robinson failed to appear in court on several occasions. – To the extent Petitioner was present in court without counsel, he was well aware of that absence as it occurred.

8. Petitioner claimed that ex-parte communications occurred on November 20, 2003. – The record reflects that Petitioner and Attorney Robinson appeared in court on that day. Clearly, Petitioner was aware of statements made on the record at that time and they were obviously not ex-parte.

9. Petitioner claimed that on July 31, 2002, the Court engaged in an ex-parte communication with Assistant District Attorney Coffey. – On that day, Petitioner was scheduled for formal arraignment. Because Attorney Robinson was not present, the proceeding was continued to the call of either party. A hearing was already scheduled for the next day on Petitioner's motion to remand the matter for a second preliminary hearing. Clearly, nothing of substance was discussed and Petitioner was not prejudiced by any conversation involving the continuance. Simply not being present under such circumstances did not entitle Petitioner to post-conviction relief.

10. Petitioner claimed that he should not have been represented by the Public Defender's Office when it was alleged that someone within that office was also representing Mr. Hauf. – Petitioner was represented by Attorney Miley of the Public Defender's Office through the first preliminary hearing on April 29, 2002, at most a period of one month. The following day, Attorney Robinson entered an appearance to represent Petitioner. Even if someone within the Public Defender's Office represented Mr. Hauf in entering his plea for a separate incident, that fact would not entitle

14

Petitioner to post-conviction relief.[10] Defendant claimed that such representation provided information to "an opposing party." The opposing party would have been the Commonwealth. Petitioner did not aver any specific confidential information made that the Commonwealth received about him from the Public Defender's Office.

11. Petitioner claimed that the undersigned violated his rights because I was the fact finder after he had waived his right to a jury trial. – Petitioner never proceeded to a jury or a non-jury trial so the undersigned was never placed in a position of being a fact finder in determining his guilt. Guilt was established based upon Petitioner's admissions during his plea colloquy on December 22, 2003.

12. Petitioner claimed that the Court impounded "a Domestic proceeding/custody hearing on May 11, 2004" after he submitted a motion for reconsideration. – The undersigned participated in no domestic or custody proceeding in 2004. All Family Court matters in Adams County were handled at that time by Honorable Robert G. Bigham. The undersigned was acting as the Juvenile Court Judge at that time but took no steps to secure any juvenile proceeding involving K. S. from Petitioner. Juvenile proceedings are, for the most part, denied public access under provisions of the Juvenile Act. Nevertheless, this jurist had developed a standard order allowing criminal defendants access to statements contained in Children & Youth files when the agency was involved with

---

[10] It was also possible that Attorney Miley had to withdraw because another member of the Public Defender's Office represented all juveniles in dependency proceedings. Even if that were the case, no prejudice existed. Petitioner was clearly represented by independent counsel throughout the great majority of the case up to sentencing. The juvenile victim never testified against Petitioner because he entered a plea. No information was revealed at the time of the plea that was inconsistent with averments in the Affidavit of Probable Cause attached to the Criminal Complaint.

15

sexual assault victims. In this case, no request for such information was ever made to the undersigned by anyone on behalf of Petitioner up to and through sentencing.

13. Petitioner claimed that Attorney Entwistle was ineffective for not raising the ineffectiveness of Attorney Robinson. – The Court felt this claim was without merit for several reasons. First, allegations of ineffectiveness of Attorney Robinson were based upon alleged actions or inactions, outlined above, which were either time-barred or without merit. If Petitioner could not legally establish that Attorney Robinson was ineffective, Attorney Entwistle could not be deemed ineffective for failing to raise that claim. Second, Attorney Entwistle did allege Attorney Robinson's ineffectiveness in the Motion filed on May 20, 2004. If established, valid claims of ineffectiveness, at most, would have only entitled Petitioner to withdraw his plea. However, because Petitioner was not willing to withdraw his guilty plea, any ineffectiveness claim became moot at that point.

14. Petitioner claimed that a proceeding was held on August 1, 2002, without him being present. – August 1, 2002, was the day that Petitioner's request for a remand was to be considered by the Court. Petitioner contended that Attorney Miley was subpoenaed by the Commonwealth and that because Petitioner was not present, ex-parte information was divulged to the District Attorney's Office. Neither the record nor the Court's recollection revealed whether Attorney Miley actually appeared that date but the record is clear that he presented no information on the record. It is likely that he was called to outline the background surrounding the waiver of the first preliminary hearing. Petitioner's absence was not explained except to note that "some issue arose at the

16

prison." The fact that Petitioner was not present did not prejudice him because the Court granted his request for a remand without the need for a hearing.

15. Petitioner claimed that some proceeding occurred on November 20, 2002, during which a plea agreement was entered. – A search of the record clearly revealed that no proceeding was scheduled or took place on the date.

16. Petitioner claimed that Judge Bigham was the issuing authority but the undersigned divested him of his authority. – The record showed that the issuing authority was Magisterial District Judge John C. Zepp. On April 30, 2002, Attorney Miley filed a Motion for Reduction of Bail that was set for hearing on May 10, 2002. On that day, the undersigned continued the hearing to June 21, 2002, upon a motion filed by Attorney Robinson. Also scheduled for that same day was the request for remand. Judge Bigham, at Petitioner's request, entered an Order on May 10, 2002, also continuing that hearing to June 21. The issue was considered nonsensical.

17. Petitioner claimed that he was sentenced for violating Section 3121(a)(6) of the Crimes Code, however, that section had been repealed on December 9, 2002 prior to his formal arraignment. – The Criminal Complaint alleged conduct occurring between September 2001 and February 2002. Included were 15 counts alleging Rape under then Section 3121(a)(6). That section provided,

> (a) Offense defined. A person commits a felony of the first degree when he or she engages in sexual intercourse with a complainant:
>
> . . .

17

(6) who is less than 13 years of age.
This section was deleted by Act 162 of 2002, enacted December 9, 2002, and effective February 7, 2003. Section 3121 was then amended by Act 226 of 2002, effective February 14, 2003, to provide,

> (C) Rape of child – A person commits the offense of rape of a child, a felony of the first degree, when the person engages in sexual intercourse with a complainant who is less than 13 years of age.

The repealer did not, as Petitioner argued, relieve him from criminal responsibility under §3121 for the offenses he committed more than one year prior to February 7, 2003.

18. Petitioner claimed that in various documents it was alleged that the sexual abuse began in Waynesboro, Franklin County. – Petitioner misinterpreted the charging documents. The Commonwealth was not alleging conduct that occurred in Franklin County. The Affidavit of Probable Cause stated that the alleged "behavior began during the month of September 2001 while at the mother's former address in Waynesboro, Pa. The sexual acts continued when [Petitioner] moved to Adams County (Idaville-York Springs Rd., Huntington Twp.) during the latter part of September, 2001." In turn, the Criminal Complaint averred that the abuse occurred at "71 Idaville-York Springs Rd., Huntingdon Twp. In Adams County." The Information also averred that the conduct being charged occurred in Adams County. It was clear that the Commonwealth was only pursuing the conduct alleged to have occurred in Adams County and only made reference to Franklin County in the Affidavit of Probable Cause by way of historical background.

18

On February 7, 2008, Petitioner appealed the dismissal of his first PCRA motion. On January 2, 2009, Superior Court affirmed the dismissal. Petitioner attempted to have the Pennsylvania Supreme Court review his claims but his request was denied by that court on August 19, 2009.

Nearly three years later, on July 30, 2012, Petitioner filed a second Post Conviction Collateral Relief Act Petition. The Petition was quite extensive and for the first time included some documents previously discussed on the record but never made a part of the record. These included 1) a letter from the District Attorney to Attorney Robinson dated October 24, 2003, which contained a copy of the March 25, 2002 Report of Laboratory Examination from Cellmark Diagnostics; 2) a letter from the District Attorney to Attorney Robinson dated November 6, 2003, responding to counsel's discovery request and attached was a report dated October 14, 2003, from BRT Laboratories, Inc.; and 3) a copy of a letter from Attorney Robinson to Petitioner dated November 12, 2003, wherein he wrote "[e]nclosed please find a copy of the results from your recent DNA test. Unfortunately, once again the DNA test is positive. Under the terms of our agreement with the District Attorney's office, it calls for us to enter a plea of guilty and to have an open plea so that the Judge will decide the appropriate sentence in your case." After carefully reviewing the Petition, the undersigned wrote to Petitioner on September 25, 2012, outlining why the Court believed that all issues were time-barred and, therefore, there was a lack of jurisdiction to consider the merits of the petition. The Court identified the following issues which seemed to be raised by Petitioner:

1. Prosecutorial misconduct related to re-filing of charges.

2. Judicial misconduct for:

   a. Being involved in juvenile court proceedings involving the victim;

   b. Refusing to accept a nolo contendere plea;

   c. Having access to the victim impact statement at sentencing;

19

    d. Having some impact upon the assessment by the Sexual Offenders Assessment Board;

3. Ineffective assistance of counsel by Attorney Robinson for:

    a. Not pursuing speedy trial rights;

    b. Not challenging venue;

    c. Not challenging the timeliness of the sentence;

    d. Not challenging the restitution imposed;

    e. Not pursuing the terms of a plea agreement with the Commonwealth;

    f. Failing to assert Petitioner's reluctance to enter a plea;

    g. Failing to question the DNA results.

4. Ineffective assistance of counsel by Attorney Entwistle for withdrawing as Petitioner's attorney.

5. Ineffective assistance of counsel by Attorney Nell for not raising the ineffectiveness of prior counsel.

6. Ineffective assistance of counsel for not making the results of DNA testing part of the record.

7. Errors by the trial court for:

    a. Disregarding the SOAB assessment;

    b. Breaching a plea agreement.

8. Imposition of an improper sentence because:

    a. The counts should have merged;

    b. The sentence involved matters which occurred in Franklin County;

    c. There was no statutory authority to impose the sentence.

9. Petitioner improperly waived a preliminary hearing in exchange for a plea agreement that was not accepted.

20

10. Charges were improperly re-filed on December 30, 2002.

The Court granted Petitioner until October 28, 2012 to respond with additional reasons not to dismiss the petition.

On October 5, 2012, Petitioner filed a "Notice of Non-compliance" wherein he expressly stated that he would not respond to the Court's correspondence dated September 25, 2012. Therein, he reasoned that the "Affidavit of Prejudice" filed with his Petition on July 30, 2012, was sufficient to disqualify the undersigned from further involvement in the proceeding. The undersigned concluded that the accusations contained in that Affidavit were frivolous and that there was no valid basis for recusal from disposing of the Petition. Therefore, on October 28, 2012, that Petition was dismissed without a hearing and Petitioner was advised of his right to file an appeal. No direct appeal was filed.

On February 1, 2013, Petitioner filed a civil action against the superintendent of the state correctional institution where he is imprisoned, the District Attorney of Adams County, the undersigned, and the Attorney General of Pennsylvania, seeking habeas corpus relief.[11] By Order dated February 15, 2013, Adams County President Michael A. George noted that all Adams County judges had recused themselves from this matter and the case was assigned to the Honorable Edward E. Guido of Cumberland County. On April 1, 2013, Judge Guido dismissed the Petition with prejudice as to the undersigned. That decision was affirmed by the Supreme Court on June 27, 2013.

On March 10, 2014, Judge Guido dismissed the entire civil action. He wrote that it appeared Petitioner was attacking the propriety of his conviction and sentence in the criminal case and, therefore, all issues should be addressed in the context of a proceeding under the Post-Conviction Relief Act. Judge Guido felt Petitioner's issues

---

[11] Jeffrey L. Armolt v. John Kerestes, Superintendent; Shawn Wagner, District Attorney of Adams County; Judge John Kuhn; Kathleen Kane, Attorney General, No. 2013-SU-125.

21

were previously addressed in this Court's Opinion dated January 28, 2008 and letter dated September 25, 2012.

This decision was affirmed by Superior Court on July 23, 2014. Superior Court identified five issues Petitioner stated he was attempting to raise.

1.  Whether the writ of habeas corpus is a matter where relief is sought in the context of a separate case record; the beginning of an independent civil action/inquiry which, is not subject to criminal appellate review or jurisdiction;

2.  Whether when challenges to jurisdiction arise, is the burden of proof upon the government a matter that must be decided;

3.  Whether pursuant to the habeas corpus act and present-day law there is a condition precedent that entitled the applicant to specific practices and procedures from the court;

4.  Whether the no answer letters submitted either personally or on behalf of the respondents render a form of confessed judgment warranting plaintiff's relief; and

5.  Whether plaintiff's privilege/right to the writ of habeas corpus was unlawfully suspended through constructive deprivations by the specific acts, omissions or conduct of the specially presiding court (judge).

In its written opinion, Superior Court noted that although Petitioner's allegations were "confusing" it was able to discern that his argument was that the Adams County Court of Common Pleas lacked jurisdiction over his criminal matter. The Court concluded, without much discussion, that a claim alleging that a conviction or sentencing resulted from a proceeding in a tribunal without jurisdiction is cognizable under the PCRA. Having so concluded, the court then noted that under the PCRA all petitions must be filed within one year of when a defendant's judgment becomes final. Noting that

22

Petitioner invoked none of the time-bar exceptions, it concluded that the instant action was facially untimely and affirmed the dismissal of the action.

CURRENT PCRA

The current Petition was filed on August 26, 2014. Therein, it appears that Petitioner is raising the following issues:

1. Where challenges to jurisdiction arise, the burden of proof is upon the Commonwealth and the Court. – Specifically, Petition contends that there were improper re-filings of criminal charges in this matter and, as a result, the Court proceeded without jurisdiction.

2. The regularity of the proceedings can be called into question where the Commonwealth and the Court exceeded jurisdiction through misrepresented evidence. – Specifically, Petitioner contends that the Commonwealth misrepresented the DNA evidence and that his counsel was ineffective for not making the test results part of the record. He stresses that this evidence could not have supported a guilty verdict. Finally, he questions why the Court did not make the test results part of the record.

3. The regularity of the proceedings can be called into question where the court exceeded jurisdiction by implementation of a court-made policy and blatant disregard of fact-finding by the Pennsylvania Sexual Offenders Assessment Board. – Specifically, the Petitioner claims the Court exceeded its authority by having a policy not to accept nolo condentere pleas in sexual offenses. He argues that this interferes with plea negotiations and violates his right against self-incrimination. Petitioner further claims that the court exceeded its authority by subjecting him to registration requirements under Megan's Law even though the Sexual Offenders Assessment Board found that he was not a sexually violent predator.

23

4. The regularity of the proceedings can be called into question where Petitioner was permitted to enter multiple guilty pleas and the sentencing court exceeds its jurisdiction when imposing sentence under mandatory sentencing guidelines without proof of prior conviction. – Specifically, Petitioner claims that the Court improperly imposed mandatory sentencing upon him even though he had no prior criminal convictions.

Petitioner stated that he was seeking the following relief:

1. For the Court to establish for the record exactly what statute(s) authorized the Court to impose the sentences on April 12, 2004;

2. For the Court to establish for the record exactly what statute(s) authorized the Court to impose any and all sentencing terms, conditions, or stipulations to go along with the sentences imposed on April 12, 2004;

3. For the Court to establish for the record exactly what statute(s) specific to Petitioner's claims by law that serve as a bar to the Court defining the exact contours of the underlying constitutional rights;

4. The regularity of the proceeding can be called into question where Petitioner was permitted to enter multiple guilty pleas and the sentencing court exceeded its jurisdiction when imposing sentences under mandatory sentencing guidelines without proof of prior conviction;

5. For the Court to establish for the record exactly what statutes permitted the Commonwealth and the Court to exercise power and authority beyond its jurisdiction; and

6. Any other relief this Court deems appropriate.

On October 8, 2014, after review of the Petition,[12] the Court issued an Order indicating that Petitioner's claims were time-barred but granted him 30 days to submit additional reasons to avoid the jurisdictional time bar. On October 29, 2014, Petitioner filed his Response to this Order.

Meanwhile, on October 16, 2014, Petitioner filed a Supplemental Amendment to Post-Conviction Collateral Relief Act Petition wherein he challenged the legality of his sentence as it related to the imposition of the restitution. On October 29, 2014, the Court issued an Order outlining why this claim was also time-barred but granted Petitioner 30 days to submit additional reasons to avoid that outcome. On November 12, 2014, Petitioner filed his Response.

## DISCUSSION

In Pennsylvania, every person convicted of a crime has a right to file a direct appeal from the sentencing 42 Pa. C.S.A. §9781; Pa. R. Crim. 720. Once the defendant has exhausted his direct appeal rights, or has waived his right to do so, he may seek collateral relief from a conviction for a crime he did not commit or from an illegal sentence under provisions of the Post Conviction Relief Act, 42 Pa. C.S.A. §9541, et. seq. The purpose of the PCRA is to prevent fundamentally unfair convictions. *Commonwealth v. Carbone,* 707 A.2d 1145, 1148 (Pa. Super. 1998).

Petitions under the PCRA are to be filed in the court of common pleas. §9545(a); Pa. R. Crim. P. 901(B). In order to be eligible for relief under the PCRA, the petitioner must plead and prove,[13] inter alia, that:

---

[12] Pa.R.Crim.P. 907 requires the court to promptly review the petition and if the judge is satisfied that there is no genuine issue concerning any material fact, that the defendant is not entitled to post-conviction collateral relief and that no purpose would be served by further proceedings, the judge must give notice to the parties of its intention to dismiss the petition, the reasons for the dismissal, and an opportunity for the defendant to respond to the proposed dismissal within 20 days.

[13] §9543.

25

1. He has been convicted of a crime and is currently serving the sentence for that crime;

2. The conviction resulted from one or more of the following:

   a. A violation of the constitution of either the United States or Pennsylvania which, under the circumstances, so undermined the truth determining process that no reliable adjudication of guilt or innocence could have taken place.

   b. Ineffective assistance of counsel which, under the circumstances, so undermined the truth determining process that no reliable adjudication of guilt or innocence could have taken place;

   c. A plea of guilty unlawfully induced where the circumstances make it likely that the inducement caused the petitioner to plead guilty and the petitioner is innocent;

   d. The improper obstruction by government officials of the petitioner's right to appeal where a meritorious appealable issue existed and was properly preserved in the trial court;

   e. The unavailability at the time of exculpatory evidence that has subsequently become available and would have changed the outcome of the trial if it had been introduced;

   f. The imposition of a sentence greater than the lawful maximum; or

   g. A proceeding in a tribunal without jurisdiction; and

3. The allegation of error had not been previously litigated or waived. An issue has been previously litigated if the highest appellate court in which the petitioner could have had review as a matter of right has ruled on the merits of the issue or it has been previously raised and decided in a proceeding collaterally attacking the conviction or sentence. As issue is waived if the

26

petitioner could have raised it but failed to do so before trial, at trial, during unitary review, or on appeal or in a prior post-conviction proceeding.[14]

Clearly, at the time the instant Petition was filed, Petitioner was still (and continues to be) serving his sentence. He claims he is eligible for relief because of constitutional violations, a sentence greater than the lawful maximum, and a proceeding in a tribunal without jurisdiction. §9545(a)(2)(i), (vii) and (viii).[15] Facially, Petitioner has raised some issues which arguably might render his claims eligible for a hearing on the merits.

However, initial or subsequent PCRA petitions must be filed within one year of the date the judgment becomes final. §9545(b)(i). A judgment becomes final, at the conclusion of direct review or at the expiration of the time for seeking review. §9545(b)(3). The one-year statutory time restriction is to be strictly construed. *Commonwealth v. Stokes,* 959 A.2d 306, 309 (Pa. 2008). It is both mandatory and jurisdictional in nature and may not be altered or ignored in order to reach the merits of the claims raised in the petition. *Commonwealth v. Jones,* 54 A.3d 14, 16-17 (Pa. 2012); *Commonwealth v. Cintora,* 69 A.3d 759, 762 (Pa. Super. 2013). A petitioner is not automatically entitled to an evidentiary hearing, *Commonwealth v. Miller,* 102 A.3d 988, 992 (Pa. Super. 2014), and a hearing cannot be used as a fishing expedition. If the

---

[14] §9544.

[15] Petitioner also claims that he is eligible for relief under §9545(b)(5) of the PCRA which he contends was enacted pursuant to "The Act of June 17, 2011, Senate Bill No. 1153, Printers No. 1367, Session of 2011 (effective in (60) days)" which allegedly reads

> (5) Notwithstanding any other provision of law, any petition filed under this subchapter alleging a miscarriage of justice that lead (sic) to the conviction of a person who was factually innocent of the crime for which the person was convicted, in light of all the credible evidence available at and subsequent to trial, may be filed at any time.

It is the concept of an alleged "miscarriage of justice" the Petitioner uses as the basic premise upon which he contends he is entitled to a hearing and relief more than 10 years after his sentencing. Unfortunately for Petitioner, he cannot rely on this passage to support his eligibility for relief because this provision was never enacted by the Legislature and is not part of the PCRA.

27

petition is not filed timely, the court has no jurisdiction to consider the claims raised therein. *Id.* Jurisdiction[16] relates to the competency of a court to hear and decide the type of controversy presented. ***Commonwealth v. Concordia,*** 97 A.3d 366, 371 (Pa. Super. 2014). Thus, if the petition is not filed timely, the court is not competent to consider it.

In the instant case, Petitioner was sentenced on April 12, 2004, but filed a timely motion for modification of sentence. That motion was denied on July 20, 2004. At the latest, Petitioner had until August 19, 2004 to file an appeal to Superior Court. Pa. R. Crim. P. 720(A)(2)(b). No direct appeal was filed. Accordingly, Petitioner had until August 19, 2005 to file his current Petition but did not do so until August 26, 2014, more than nine years later. For that reason, the petition could be dismissed unless Petitioner is able to satisfy exceptions to the one-year time bar.

There are statutory exceptions to this one-year filing requirement if the petitioner pleads and proves that 1) the failure to file timely was the result of interference by governmental officials with the presentation of the claim; 2) the facts upon which the claim is based were unknown to the petitioner and could not have been ascertained by the exercise of due diligence, or 3) the right asserted is a constitutional right recognized by the Supreme Court of the United States or Pennsylvania after the time for filing and that court ruled it can be applied retroactively. §9545(b)(i-iii). If the petitioner raises one of these exceptions, the petition must be filed within 60 days of the date the claim could have been presented. §9545(b)(2).

These timeliness requirements apply to all PCRA petitions, regardless of the nature of the individual claims raised therein. ***Commonwealth v. Jones, supra.,*** 54 A.3d at 17, including whether the sentence is illegal. ***Commonwealth v. Taylor,*** 65

---

[16] As opposed to the power of the court which refers to the ability of a court to effect a certain result.

A.3d 462, 468 (Pa. Super. 2013); *Commonwealth v. Fowler,* 930 A.2d 586, 592 (Pa. Super. 2007).

Furthermore, a second or subsequent PCRA will not be entertained unless the petitioner presents a strong prima facie showing that a miscarriage of justice may have occurred. *Commonwealth v. Stokes, supra.,* 959 A.2d at 309; *Commonwealth v. Hawkins,* 953 A.2d 1248, 1251 (Pa. Super. 2006).

Here, Petitioner's fundamental barrier to a consideration of the merits of his petition lies with the fact that all issues raised are time-barred, waived or previously litigated. As noted above, if Petitioner cannot get past the jurisdictional time-bar, this Court has no jurisdiction or authority to consider his claims, is not permitted to conduct a hearing on the merits, and cannot grant him any relief. Nevertheless, he attempts to circumvent this impediment by alleging that government officials interfered with his presentation of the claim, §9545(b)(1)(i), and by arguing that he can challenge the legality of his sentence at any time pursuant to 42 Pa. C.S.A. §9781(a).

Below the undersigned will discuss why each issue is time-barred, waived or previously litigated and will, for the sake of argument (and in an effort to bring closure to Petitioner's repetitious pleadings), also offer some explanation why the issue might lack merit.

The Court can quickly dispatch Petitioner's argument that 42 Pa. C.S.A. §9781 entitles him to challenge the legality of his sentence at any time. In pertinent part, that section reads

> (a) Right to Appeal. – The defendant or the Commonwealth may appeal as of right the legality of a sentence.

This provision, however, only applies to direct appeals from sentencing. At the time of Petitioner's sentencing in 2004, the Court was required to advise a defendant of his right to file a direct appeal from the sentence within 30 days after the sentence or disposition

29

following any post-sentencing motions. Pa. R. Crim. P. 704(C)(3)(a); 720. Part of the plea colloquy documents submitted by Petitioner included a Statement of Post-Sentencing Rights which set forth this information. Petitioner indicated his review and understanding of the information by placing his initials next to the paragraph discussing the Rule. In addition, these requirements were discussed at sentencing on April 12, 2004. Petitioner did not file a direct appeal.

Instantly, Petitioner is not "appealing" his sentence. Instead, he is attempting to initiate post-conviction collateral relief from his sentence. There is a fundamental difference between filing an appeal and seeking collateral relief even though the end result could be similar. As will be discussed later in this Opinion, there is a general rule that a challenge to the legality of a sentence may be raised at any time. However, it must be raised in the proper proceeding and before a court having jurisdiction to correct the sentence. Our appellate courts have held that any petition filed after the judgment of sentence becomes final will be treated as a PCRA petition. *Commonwealth v. Jackson,* 30 A.3d 516, 522 (Pa. Super. 2011). The plain language of the PCRA provides for an action by which a person serving an illegal sentence may obtain collateral relief and it is intended as the sole means of obtaining such relief. *Id.* However, one is not permitted to challenge the legality of his sentence in a PCRA proceeding if his petition is not timely filed. *Id. Commonwealth v. Taylor, supra.* Thus, §9781 does not provide a basis to proceed with the instant PCRA petition.

Petitioner also claims that he is not time-barred from proceeding on the merits of his petition because he has alleged an exception to the one-year requirement under §9545(b)(1)(i) which applies when the failure to raise the claim within one year after judgment became final resulted from interference by governmental officials with the presentation of the claims. In that regard, Petitioner alleges the following governmental obstructions:

1.  The Court failed to question the Commonwealth's re-starts/re-filing of the criminal informations;

2.  That there was an improper delay from the filing of the motion for remand of the preliminary hearing on April 30, 2002 until that hearing was held on November 12, 2002;

3.  The Court permitted the re-filing of a criminal information on December 30, 2002 without regard to whether the charges were properly withdrawn;

4.  The Court permitted Petitioner to remain incarcerated from his second preliminary hearing on November 19, 2002 until November 12, 2003 while awaiting results of a second DNA test;

5.  The Court previously denied Petitioner a PCRA hearing to develop a record regarding discussions about re-filing of criminal informations, waivers of preliminary hearings and the DNA testing;

6.  Petitioner was denied transcripts of the preliminary hearings;

7.  The Court fails to acknowledge a proceeding taking place on November 19 or 20, 2002;

8.  The Court limited Petitioner's access to transcripts;

9.  Judge Guido "converted" Petitioner's 2013 habeas corpus action to a PCRA proceeding;

10. The Petitioner and his counsel were misled that the DNA evidence was not part of the record.

Without commenting on the merits[17] of any of these alleged obstructions they clearly do not allow Petitioner to avoid the jurisdictional time bar. The governmental

---

[17] However, it is obvious that none of these claims constitute interference by a government official that prevented Petitioner from raising those claims in a PCRA proceeding prior to August 19, 2005. To the extent he did raise claims previously, which were either not appealed or rejected on appeal, a court decision denying him a hearing because of untimeliness is not government

31

interference exception allowed in §9545(b)(1)(i) must be raised in a petition filed within 60 days after information supporting the claim became known to the petitioner. §9545(b)(2). Here, the current Petition was filed on August 26, 2014. The background Petitioner is using to support all of his claims was known to him long before that 60-day period could have commenced on June 28, 2014. Therefore, he is precluded from raising this exception to the jurisdictional time bar.

Petitioner alleges that there were improper "re-starts" of his legal proceedings and the "re-filing" of criminal informations. Specifically, he claims that there was 1) a 2001 criminal information, 2) a criminal information dated March 27, 2002, 3) a criminal information dated April 30, 2002, and 4) a criminal information filed in open court on December 30, 2002. He contends that these documents demonstrate a withdrawing and re-filing of charges in violation of the Rules of Criminal Procedure which, in turn, deprived the Court of jurisdiction to sentence him.

Petitioner directs the Court to documents attached to his 2012 PCRA where he raised this issue and his 2013 habeas corpus action to support his claim. To the extent Petitioner raises an issue cognizable under the PCRA, his reference to documents in his possession before filing his 2013 action, demonstrates that the issue was known to him more than 60 days before he filed the instant Petition. Accordingly, this issue is untimely. Furthermore, because this issue was raised previously and not overturned on appeal, it has been previously litigated and is not eligible for consideration at this time.

Even if the issue was not time-barred, the record clearly shows that there was no re-filing of criminal charges and the claim is meritless. Petitioner points to a computer-generated docket sheet produced on some unknown date which seems to refer to a disposition on Rape, Aggravated Indecent Assault and Indecent Assault charges in the

---

interference as contemplated by §9545. Even if it did constitute interference, it does not explain why the current petition was not filed within 60 days after learning of the information supporting the claim.

above matter on "10/1/01". The entry is an obvious error not supported by the record documents and likely related to a migration error occurring during the transition to the CPCMS docketing system in Adams County. The entry appears to suggest that on that date, Petitioner entered a guilty plea to Rape and the other charges were withdrawn. Obviously, Petitioner knows he did not enter a guilty plea on that date. Furthermore, the State Police were not summoned to investigate this case until February 24, 2002. Therefore, nothing could have occurred procedurally four months earlier. Petitioner's allegations are an attempt to create an issue where none exists.

A review of the file supports the background outlined in the beginning of this Opinion. Documents show the following:

03/27/2002 – Criminal Complaint filed with the MDJ charging Rape, Aggravated Indecent Assault and Indecent Assault and case given MDJ docket number CR-103-02 and OTN H-472454-3;

04/29/2002 – Petitioner waived his preliminary hearing and was given notice that his formal arraignment would be held on May 30, 2002;

04/30/2002 – MDJ docket transcript for MDJ Case No. CR-103-02; OTN H-472454-3; printed that date at 11:44 A.M. is filed with the Clerk of Courts and the case receives a Common Pleas docket number of CR-509-02. The MDJ docket does not show any charges being added or withdrawn;

04/30/2002 – Attorney Robinson files Petition For Remand;

08/01/2002 – Petition For Remand granted by the Court;

08/22/2002 – Clerk of Courts returned the file to the MDJ;

11/12/2002 – Petitioner waives his preliminary hearing in MDJ Docket No. CR-103-02; OTN H-472454-3. The MDJ docket does not show any charges being added or withdrawn;

33

11/12/2002 – MDJ docket transcript for MDJ Case No. CR 103-02, OTN H-472454-3, filed with Clerk of Courts in the Common Pleas docket number of CR-509-02;

12/30/2002 – Petitioner formally arraigned and the Criminal Information, filed in open court, charging him with Rape under §3121-6 (Counts 1-15); Aggravated Indecent Assault under §3125(1) (Counts 16-30); Aggravated Indecent Assault under §3125-7 (Counts 31-45); Indecent Assault under §3126(a)(1) (Counts 46-60); and Indecent Assault under §3126(a)(7) (Counts 61-75) was time stamped by the Clerk of Courts;

12/22/2003 – Petitioner signs his name on the aforementioned Criminal Information indicating that he is pleading guilty to Counts 1, 2 and 3 and the Clerk of Courts places its time stamp thereon.

The record documents show that the charges were originally filed on March 27, 2002 and up to the time of Petitioner's guilty plea were not withdrawn or amended. Therefore, there was no improper violation of the procedural rules or any reason to question the Court's jurisdiction to sentence Petitioner.

Petitioner's second claim is that the "Commonwealth and Court exceeded jurisdiction through misrepresented evidence." Petitioner seems to claim that throughout this case the District Attorney "misrepresented" that the two DNA test results indicated his guilt and that those tests were never made part of the record to prove otherwise. This issue was known to Petitioner well before the time allowed for the filing of the instant petition.

The Affidavit of Probable Cause filed with the Criminal Complaint on March 27, 2002 made Petitioner aware that testing was done by Cellmark which identified him as father of the baby. Claiming that test was invalid, Petitioner filed a Motion on February 7, 2003 for a second test that was granted. On November 20, 2003, Attorney Robinson

34

11/12/2002 – MDJ docket transcript for MDJ Case No. CR 103-02, OTN H-472454-3, filed with Clerk of Courts in the Common Pleas docket number of CR-509-02;

12/30/2002 – Petitioner formally arraigned and the Criminal Information, filed in open court, charging him with Rape under §3121-6 (Counts 1-15); Aggravated Indecent Assault under §3125(1) (Counts 16-30); Aggravated Indecent Assault under §3125-7 (Counts 31-45); Indecent Assault under §3126(a)(1) (Counts 46-60); and Indecent Assault under §3126(a)(7) (Counts 61-75) was time stamped by the Clerk of Courts;

12/22/2003 – Petitioner signs his name on the aforementioned Criminal Information indicating that he is pleading guilty to Counts 1, 2 and 3 and the Clerk of Courts places its time stamp thereon.

The record documents show that the charges were originally filed on March 27, 2002 and up to the time of Petitioner's guilty plea were not withdrawn or amended. Therefore, there was no improper violation of the procedural rules or any reason to question the Court's jurisdiction to sentence Petitioner.

Petitioner's second claim is that the "Commonwealth and Court exceeded jurisdiction through misrepresented evidence." Petitioner seems to claim that throughout this case the District Attorney "misrepresented" that the two DNA test results indicated his guilt and that those tests were never made part of the record to prove otherwise. This issue was known to Petitioner well before the time allowed for the filing of the instant petition.

The Affidavit of Probable Cause filed with the Criminal Complaint on March 27, 2002 made Petitioner aware that testing was done by Cellmark which identified him as father of the baby. Claiming that test was invalid, Petitioner filed a Motion on February 7, 2003 for a second test that was granted. On November 20, 2003, Attorney Robinson

34

reported in court that the second test came back positive. At hearing on July 20, 2004, the District Attorney referred to the two tests as supporting Petitioner's guilt. During a video conference on April 17, 2007, held in response to Petitioner's first PCRA petition, he identified as an issue the failure of his blood type to appear on the DNA report. Petitioner admitted discussing this concern with Attorney Robinson on April 12, 2004, the date of sentencing, and that he was aware of this issue when he filed his Motion to Reconsider. Finally, in his second PCRA petition filed July 30, 2012, Petitioner attached a letter dated October 24, 2003, from the District Attorney to Attorney Robinson that included a copy of the March 25, 2002 Cellmark report, a letter dated November 6, 2003 from the District Attorney to Attorney Robinson that included a copy of the October 14, 2003 BRT lab report, and a letter dated November 12, 2003, from Attorney Robinson to him which enclosed a copy of that second report.

The fact that the DNA test results were not made part of the record prior to the filing of the 2012 PCRA petition is of no import. There was no reason to submit those test results as evidence because the case never went to trial. Petitioner's guilty plea was based upon his admission to three separate acts of sexual intercourse with a juvenile; not because a witness, expert or otherwise, testified as to the chain of evidence, the DNA testing procedure, or the results of the DNA testing. Clearly, he was aware of those tests prior to his plea, as evidenced by the November 12, 2003 letter mentioned above.

Even if the issue was timely filed, it lacks merit. The copies of the reports submitted by Petitioner in 2012 support the fact that the District Attorney did not misrepresent the test results. The Cellmark report makes no mention of blood type but does state "The data are consistent with [Petitioner] being the biological father of Kevin Sheeley." Likewise, the BRT report makes no mention of blood type but does state "On

the basis of all systems tested, ([Petitioner]) cannot be excluded as the father of (Frozen Tissue Sample)". That report listed the Paternity Probability as 99.99%.

Third, Petitioner claims that the Court exceeded its jurisdiction by implementing a court-made policy of not accepting nolo contendere pleas in sexual offenses. He claims that the court rejected his nolo contendere and, by doing so, interfered in the plea bargaining process, violated Pa. R. Crim. P. 105 and violated his right against self-incrimination. This issue has also been well known to Petitioner for years. The Court discussed this "policy" on the record on July 20, 2004. Petitioner raised this issue in his 2007 PCRA. Superior Court affirmed this Court's ruling that the issue was untimely. He again raised the same issue in his 2012 PCRA. The issue was again rejected as untimely but Petitioner did not appeal that decision. Thus, not only is the claim untimely but has been previously litigated.

Even if filed timely, the "policy" issue would not grant Petitioner relief. First, the record clearly shows that Petitioner never appeared before the Court and tendered a nolo contendere plea. However, if he had done so, it is likely that it would have been rejected for the reasons set forth by the undersigned on July 20, 2004. That being said, the use of the term "policy" was probably a misnomer because, in reality, it was not a policy adopted by the 51st Judicial District nor a policy binding upon any other judge in the county. Instead, it was a personal judicial philosophy arising from years of experience with sex offenders.[18]

---

[18] The Court certainly understands that a person facing multiple counts of Rape based upon substantial evidence may want to enter into a plea agreement that limits his exposure to punishment even if he is not willing to admit guilt. However, sex offenders are normally directed to sex offender treatment where acknowledgment of the facts supporting the crime is related to successful therapeutic treatment. Those not willing to admit guilt in court often do not admit guilt in treatment. When treatment fails, the rehabilitative goals of sentencing are jeopardized. Accordingly, for purposes of community safety, at that time, I believed nolo contendere pleas should be rejected in such cases. In this case, Petitioner was not pressured into pleading guilty or forfeiting his right to trial. This court's concern was discussed, to some degree, by Judge Klein's dissenting opinion in *Commonwealth v. Snavely,* 982 A.2d 1244 (Pa. Super. 2009)

This philosophy did not violate Rule 105.[19] Rule 590 expressly provides that criminal pleas are to be taken in open court where "a defendant may plead not guilty, guilty, or with the consent of the judge, nolo contendere." (emphasis added). Thus, the court has discretion whether to accept or reject a plea of nolo contendere.

It is important to note that, in the context of a PCRA proceeding, there is nothing regarding the nature of this issue that meets the eligibility criteria under §9543. There is no constitutional violation at play nor claim of ineffective assistance of counsel that so undermined the truth determining process that no reliable adjudication of guilt or innocence could have taken place. A guilty plea unlawfully induced is not at issue. There is no governmental obstruction of the accused's right to appeal a meritorious issue. The issue does not involve the discovery of exculpatory evidence, an unlawful sentence or court jurisdiction. Furthermore, Petitioner could have raised the issue on appeal after sentencing but, by failing to do so, has waived any merit that might possibly exist.

More importantly, Petitioner has shown no prejudice. A plea of nolo contendere is a plea by which a defendant does not expressly admit his guilt but he nevertheless waives his right to trial and exposes himself to sentencing as if he were guilty. *Commonwealth v. V.G.,* 9 A.3d 222, 226 (Pa. Super. 2010). Petitioner suggests that he initially intended to plead nolo contendere. If he had done so, he would have been exposed to the same plea agreement and ultimate sentence. He was given the option to withdraw his plea of guilty and vehemently rejected that opportunity. He was sentenced the same whether he had pleaded guilty or nolo contendere.

---

where he suggested the solution to sex offenders violating treatment by not admitting guilt is to not offer them nolo contendere pleas. That is exactly what my philosophy encompassed.

[19] That Rule provides that local rules cannot be inconsistent with general rules of the Pennsylvania Supreme Court nor statute. Local rules include policy or custom adopted or enforced by a court of common pleas to govern criminal practice and procedure which requires a party or an attorney to do or refrain from doing something.

Finally, Petitioner's claim that by rejecting a plea of nolo contendere the Court violated his right against self-incrimination is totally meritless. That 5th Amendment right basically guarantees that a person cannot be compelled to testify in a criminal proceeding in a manner that will incriminate himself. The Court did not compel Petitioner to plead guilty. That choice was made by Petitioner with the assistance of counsel and after an extensive written and verbal colloquy. Petitioner was made aware that he was presumed to be innocent, that he had a right to trial, with or without a jury, where the prosecution would be required to present evidence that must convince the fact finder beyond a reasonable doubt of his guilt, and that he was not required to present any evidence or to testify. Petitioner was well aware of the accusations against him, that K.S. would likely testify as to the sexual encounters, and that the Commonwealth would present testimony as to the results of the DNA testing on the child born to K. S. Instead of proceeding to trial, Petitioner gave up the aforementioned rights and admitted guilt. During the plea colloquy he acknowledged that no one was pressuring him to plead guilty. Additionally, despite this background, months later he was given the option to withdraw his plea and declined to do so. It is clear beyond reproach that Petitioner selected a course of action that he believed would be in his best interest at the time and was not forced to admit guilt.

Fourth, Petitioner claims that the Court "exceeded its jurisdiction regarding a fact-finding determination by the Pennsylvania Sexual Offenders Assessment Board" (SOAB) in regard to whether he should be designated a sexually violent predator. He suggests that the SOAB's determination that he did not meet the criteria for a sexually violent predator "serves as an acquittal." Petitioner further argues that the Court violated *Apprendi v. New Jersey*, 530 U.S. 466 (2000) by imposing a mandatory lifetime registration requirement upon him. For several reasons, this claim must be dismissed. The undersigned does not recall this issue being previously raised but it is, nevertheless,

38

untimely because it was not filed by August 19, 2005, nor does any of the timeliness exceptions apply. In addition, the issue was not appealed after sentencing and was, therefore, waived. Finally, the issue is not cognizable under the PCRA.

On October 24, 1995, the Pennsylvania Legislature amended the Sentencing Code and enacted Title 42, Sections 9791 – 9799.6, subchapter H, entitled Registration of Sexual Offenders, 42 Pa. C.S.A. §9791 – 9799.6, commonly known as Pennsylvania's Megan's Law (Megan's Law I).[20] Megan's Law I established a procedure for adjudicating persons convicted of certain offenses as sexually violent predators. The sexually violent predator provisions of Megan's Law I were struck down by the Pennsylvania Supreme Court in *Commonwealth v. Williams (Williams I),* 733 A.2d 593 (Pa. 1999)., cert. den. *Pennsylvania v. Williams,* 120 S. Ct. 792 (2000). In response, Megan's Law I was amended on May 10, 2000, and became Megan's Law II, effective July 9, 2000.[21] The amendment provided that after conviction of an enumerated offense the defendant could be subject to a separate adjudicatory process to determine whether he satisfies the criteria to be designated a sexually violent predator. It was this version that was in effect at the time of Petitioner's plea and sentence.

Megan's Law II required that after conviction for certain offenses, but before sentencing, the court was required to order a person to be assessed by the SOAB. One of those offenses was Rape, 18 Pa. C.S.A. §3121. Once the assessment was completed, the SOAB would send its report to the district attorney.[22] At the request of the district attorney, the court would schedule a hearing to determine whether the person

---

[20] Act No. 1995-24 (SSI).

[21] Act No. 2000-18.

[22] The assessment report sets forth the opinion of the evaluator. It does not become a finding that the defendant is a sexually violent predator unless, and until, it is found to be credible by a court after a hearing at which the defendant is represented by counsel and entitled to his own expert.

is a sexually violent predator. §9795.4. At sentencing, the court was required to notify the offender of his duty to register certain information with the police on a periodic basis. §9795.3. The statute provided that a person convicted of Rape was required to register for his lifetime regardless of whether he was determined to be a sexually violent predator. §9795.1(b)(2). Registration is not a sanction imposed upon a defendant by the court but rather a statutory consequence that flows from the conviction. The court is simply required to notify the defendant of those consequences.

In the instant case, Petitioner was advised of the requirements of Megan's Law at the time of his plea. Sentencing was deferred to allow the SOAB to complete its assessment. The District Attorney did not request a hearing to determine whether Petitioner fit the criteria for a sexually violent predator because the assessment did not support that finding.[23] Accordingly, the case proceeded to sentencing where Petitioner was again advised of the requirements of Megan's Law. Contrary to Petitioner's assertion, the Court made no findings regarding him being a sexually violent predator although the sentencing order noted that he was advised that he was subject to the provisions of Megan's Law. He was subject to Megan's Law because of his conviction not because of his sentence.

PCRA petitions only allow a person to collaterally challenge a conviction or sentence. *Commonwealth v. Masker,* 34 A.3d 841, 843 (Pa. Super. 2011). Our Supreme Court has held that the provisions of Megan's Law are not punitive in nature and are not part of one's sentence even though the ramifications of the law are discussed at the time of sentencing. Instead, Megan's Law registration requirements are collateral consequences of one's conviction. *Commonwealth v. Williams,* 977 A.2d

---

[23] Such a finding does not, as Petitioner contends, constitute an acquittal. As noted above, the report merely expresses the opinion of the evaluator.

1174, 1176 (Pa. Super. 2009). Accordingly, the Megan's Law process discussed above cannot be challenged in a PCRA proceeding.

Likewise, *Apprendi* is not applicable in this proceeding. That case stands for the proposition that any finding of fact that increases the maximum penalty to be imposed upon a criminal conviction must be determined by a jury beyond a reasonable doubt. Because Megan's Law requirements are not part of one's sentence and therefore do not increase the maximum penalty, a jury is not involved in determining its applicability in a particular case.

Fifth, Petitioner contends that the Court violated its jurisdiction in the imposition of a mandatory sentence. Specifically, it appears that he argues the Court improperly subjected him to mandatory sentencing under Pa. C.S.A. §9714 without evidence of a prior criminal conviction. This claim does not warrant PCRA scrutiny because 1) it is an issue that could have been raised on direct appeal and therefore is waived, 2) it was not filed prior to August 19, 2005 and therefore is untimely, 3) no exception to the jurisdictional time-bar has been averred, and 4) the claim does not meet any of the eligibility criteria under the PCRA.

Even if the Court could consider this issue, Petitioner incorrectly asserts that he was sentenced under §9714. That section addresses legislative concerns over recidivism by violent criminals and dictates sentences for second and subsequent convictions for crimes of violence. As such, it does require a prior criminal conviction before a mandatory sentence can be imposed. However, in 2004, Petitioner was sentenced under a different statutory provision.

Petitioner admitted to three separate rapes upon the same 12-year-old victim. At that time, 42 Pa. C.S.A. §9718[24] provided that if a person was convicted of raping a

_____

[24] In 1995, §9718 was amended to provide that "A person convicted of the following offenses when the victim is under 16 years of age shall be sentenced to a mandatory term of imprisonment

victim under the age of 16 years a mandatory minimum period of incarceration of not less than 5 years was to be imposed. Rape, as a felony of the first degree, exposed Petitioner to a maximum term of imprisonment of 20 years. The plea agreement called for Petitioner to be sentenced to a period of incarceration on each count of 5-10 years with the possibility of each count being served consecutively. Petitioner reserved the right to argue for any of the counts to be served concurrently. Thus, he was facing an aggregate sentence that could range from a minimum of 5-10 years up to a maximum of 15-30 years of incarceration. The Court determined for each count to be served consecutively.

Petitioner is not entitled to relief under the PCRA on this issue because the sentence imposed on each count did not exceed the lawful maximum. Furthermore, because each rape was considered a separate criminal event, the Court had the legal authority to impose consecutive sentences on each count. The mandatory nature of the sentence and the imposition of the consecutive sentences were not dependent upon whether Petitioner had a prior criminal history.

Sixth, Petitioner claims that the restitution imposed upon him was illegal. Specifically, he argues 1) that the restitution ordered was not for the benefit of the victim, and, 2) that he was denied due process of law regarding his ability to pay restitution.

When Petitioner entered his plea on December 22, 2003, he was advised that the Commonwealth was seeking $70,473.62 in restitution. In fact, his written plea colloquy form recognized that request as follows:

> The Defendant agrees to pay restitution on all charges to which pleas of guilty . . . are entered . . . as follows:

as follows: . . . 18 Pa. C.S. §3121(1), (2), (3), (4), (5) and (6) (relating to rape) – not less than five years." Act 10 Section 17 (Special Session). As noted earlier in this Opinion, the Crimes Code was amended by Act 226 of 2002, effective February 14, 2003 to redefine the crime of Rape of a victim less than 13 years of age under §3121(c). Finally, Act 178 of 2006 amended §9718 to its current requirement of a 10-year mandatory minimum term of imprisonment for Rape under §3121(c).

42

($70,473.62). 694.00 to Wetzel Funeral Home; $2,200 to Victims Comp; 67,473.62 to Blue Cross.

After the plea was completed, the Court entered an Order which included, inter alia,

Restitution has been presented to the Court in the amount of $70,473.62. The Defendant is reserving the right to request a restitution hearing at or about the time of sentencing after he has had sufficient time to review documentation presented by the Commonwealth in support of those restitution figures.

The presentence investigation report noted that $75.00 was also being requested for the Gettysburg Fire Department and $31.00 was being requested for Gettysburg Diagnostic Imaging. At the time of sentencing, Petitioner did not request a hearing on restitution but instead, through counsel, indicated "we'll stipulate and we have no objection" to the amount requested.

At the time of sentencing in this matter, the Crimes Code mandated that restitution be imposed where "the victim suffered personal injury directly resulting from the crime." 18 Pa. C.S.A. §1106(a).[25] Here, Petitioner contends that this section[26] requires payment to be made to reimburse the victim for her loss and that payment should only be made to the Victim Compensation Fund or an insurance carrier if the compensation from the fund or the carrier was paid directly to compensate the victim. He suggests that payment was not made by those entities to reimburse K. S. directly but rather is being directed to reimburse third parties.

Any claim that implicates the fundamental authority of the court to impose a particular sentence constitutes a challenge to the legality of the sentence. If no statutory authority exists for the particular sentence, if the sentence is outside the legal

---

[25] The version of Section 1106 in effect at that time was first enacted in 1976, and amended in 1978 (P.L. 202, No. 53, §7(5), effective June 27, 1978), 1995 (P.L. 999, No. 12 (Spec. Sess. No. 1), §1, effective in 60 days), and 1998 (Act 121 of 1998, §1, effective December 3, 1998).
[26] Petitioner also correctly mentions that 42 Pa. C.S.A. §9721, Sentencing Generally, also directs that the court at sentencing "shall order the defendant to compensate the victim of his criminal conduct for the damage or injury that he sustained." §9721(c).

43

parameters prescribed by the applicable statute, *Commonwealth v. Infante,* 63 A.3d 358, 363 (Pa. Super. 2013), or if a restitution order is unsupported by the record, *Commonwealth v. Stradley,* 50 A.3d 769, 771-2 (Pa. Super. 2012), the sentence is illegal. It is well settled that the PCRA is intended to be the sole means of achieving post-conviction relief. The PCRA is intended to provide relief to persons serving illegal sentences. §9542. Thus, one claiming that his sentence is illegal can only achieve post-conviction collateral relief under the PCRA. However, in order for the PCRA court to have jurisdiction to correct an illegal sentence, the petition must comply with the time requirements of §9545. *Commonwealth v. Jackson, supra.,* 30 A.3d at 521-2. Here, the petition was patently untimely, therefore, this Court does not have jurisdiction to consider Petitioner's claim. See *Commonwealth v. Taylor, supra.*

Petitioner also argues that the right to pursue relief from an illegal sentence cannot be waived and cites *Commonwealth v. Jones,* 932 A.2d 179 (Pa. Super. 2007). Petitioner is correct that *Jones* stands for the proposition that the PCRA waiver definition in §9544(b) does not preclude one from challenging an illegal sentence even if that issue was not properly preserved on direct appeal. However, that case also made clear that the challenge had to be filed timely or the court could not grant relief. That court expressly stated,

> When a petitioner files an <u>untimely</u> PCRA petition raising a <u>legality-of-sentence claim</u>, the claim is not waived, but the jurisdictional limits of the PCRA itself render the claim incapable of review. (emphasis added).

Id. at 182. Thus, even though challenges to the legality of a sentence are not technically waivable, such claims may be lost unless they are presented to a court having jurisdiction to address the challenge. *Commonwealth v. Miller, supra.,* 102 A.3d at 995. In the context of a PCRA proceeding, the court does not have jurisdiction to address an alleged illegal sentence if the PCRA petition was not filed timely. Id.

44

Petitioner's claim that he was denied due process to challenge the appropriateness of the restitution or his ability to pay restitution cannot be addressed for the reasons outlines above. Even if that claim could be addressed, it lacks merit. The concept of due process encompasses the right to a hearing where the Commonwealth has the burden of establishing the appropriateness of the restitution requested. **Commonwealth v. Atansio,** 997 A.2d 1181, 1183-4 (Pa. Super. 2010). (It is the Commonwealth's burden of proving its entitlement to restitution and it is necessary that the amount be determined under an adversarial system with consideration of due process.) Here, Petitioner had the right to a hearing but waived that right when his counsel, in his presence, indicated that he had no objection to the restitution and stipulated to the amount. Furthermore, restitution under §1106 is mandatory and is not dependent upon the defendant's ability to pay.[27] The defendant's ability to pay only becomes relevant if he fails to make payment and appears for a contempt proceeding.

Petitioner also tailors his due process argument around a challenge to Act 84 of 1998. Specifically, he relies upon the recent decision in **Montanez v. Secretary Pennsylvania Department of Corrections,** 2014 WL 5155040, ___ F.3d ___ (3rd Cir. August 15, 2014).[28]

By way of background, Act 84 amended provisions of the Sentencing Code to allow the Pennsylvania Department of Corrections (DOC) to make monetary deductions from an inmate's account for the purpose of collecting restitution and court costs. 42 Pa. C.S.A. §9728(b)(5). The Act directed the DOC to develop guidelines related to that collection process. The DOC did develop a policy that allowed deduction of 20% from the inmate's account for purposes of such payment.

---

[27] §1106(c)(1)(i) requires the court to order full restitution "[r]egardless of the current financial resources of the defendant, so as to provide the victim with the fullest compensation for the loss ."

[28] That court issued an Opinion on August 14, 2014, but the following day issued an Amended Opinion.

Over the years, there have been a number of challenges to Act 84.  For example, in *Commonwealth v. Danysh,* 833 A.2d 151 (Pa. Super. 2003) a state inmate filed a motion with the sentencing court to stop the deductions being made from his account pursuant to Act 84.  Superior Court held that the request was an attempt to stop the DOC from taking money out of his inmate account and, therefore, was an action against the Commonwealth.  As such, the court ruled that jurisdiction is vested with the Commonwealth Court and not the court of common pleas.  In *Buck v. Bear,* 879 A.2d 157 (Pa. 2005) an inmate asserted that the DOC's action of deducting funds from his account pursuant to Act 84 violated his due process rights.  He argued that the trial court should hold a hearing to determine his ability to afford the deductions.  Our Supreme Court, while acknowledging that a prisoner has a property interest in his inmate account, nevertheless rejected Buck's claim.  Instead, the Court held that the sentencing hearing process provided the defendant with adequate pre-deprivation due process.  The same result was reached in *Richardson v. Pennsylvania Department of Corrections,* 991 A.2d 394 (Pa. Comwlth Ct. 2010).

Several months ago, the Third Circuit issued its opinion involving a pre-deprivation due process claim regarding Act 84 deductions in *Montanez.*  There, an inmate[29] brought a §1983 action[30] challenging the DOC's automatic deduction of funds from his inmate account to cover restitution and court costs.  The court noted that the inmate was not suggesting that any additional process be given by the Pennsylvania courts.  Rather, his challenge was limited to whether the inmate must be provided with notice under the DOC Policy regarding the deductions and an opportunity to be heard regarding application of the Policy prior to the first deduction.  The court agreed with the inmate.  It stated that it agreed with *Buck v. Beard* that Pennsylvania did not need to

---

[29] The action involved inmates Montanez and Hale.  Montanez' claim was dismissed based upon the statute of limitations.
[30] 42 U.S.C. §1983.

46

provide any additional judicial hearing for an inmate to determine his ability to pay before making deductions from his account. However, it did conclude that

> At a minimum, federal due process requires inmates to be informed of the terms of the DOC Policy and the amount of their total monetary liability to the Commonwealth . . . In particular, the DOC must disclose to each inmate before the first deduction: the total amount the DOC understands the inmate to owe pursuant to the inmate's sentence; the rate at which funds will be deducted from the inmate's account; and which funds are subject to deduction. Further, inmates must have a meaningful opportunity to object to the application of the DOC Policy to their inmate accounts before the first deductions commence. . .

> To be clear, we do not suggest that the DOC must provide each inmate with a formal, judicial-like hearing before the onset of deductions. Moreover, we find nothing substantively unreasonable about the DOC's refusal to provide exceptions to its across-the-board 20% rate of deduction, in light of the fact that the DOC will not make deductions when an inmate's account falls below a certain minimum. Because we find the deduction rate to be reasonable, the DOC need not entertain a challenge to the rate of deduction, though it must provide an opportunity for inmates to object to potential errors in the deduction process.

> We also do not mean to suggest that inmates must have an opportunity to be heard prior to each deduction. Rather, after providing the required initial notice the DOC could provide inmates with an informal opportunity to supply written objections to prison administrators prior to the first deduction. . .

(citations omitted).

As this Court understands Petitioner's current claim, he believes **Montanez** means he is entitled to a hearing before this Court to determine his ability to afford the deductions from his account. As is obvious from the above discussion, **Montanez** does not provide him with a due process argument outside the walls of the DOC. If he has a concern regarding deductions from his account, he should direct his attention to those officials. Furthermore, a claim challenging whether deductions can be made from one's account does not challenge the legality of a sentence and, therefore, is not cognizable under the PCRA. Even if this issue somehow implicates the legality of Petitioner's sentence, the claim is set forth in a petition that is patently untimely. In either circumstance, this Court has no jurisdiction to address this claim.

Based upon past history, the undersigned suspects that Petitioner will not agree with the reasoning nor the decision made herein.  He is invited to share his arguments with an appellate court if he is convinced that this jurist's conclusions are erroneous.

Accordingly, the attached Order is entered.

BY THE COURT,

JOHN D. KUHN
Judge

Dated:  January 8 , 2015

1/9/15
9:22 SN

COPIES

Original
Shawn Wagner, Esq. - email
Jeffrey L. Armolt, pro se - FT 3557 SCI Mahanoy
Court Administration -
Adams County Legal Journal / email
District & County Reports
Media Copy

301 Morea Rd
Frackville, PA 17932

Cert # 70031680000085023997

48